Lina'la Sin Casino
Members/Supporters

Archbishop Anthony S. Apuron
Arriola, Joy
Arroyo, Raymond
Barcinas, Josefina
Concho, Charles
* Cruz, Jose Q. Dr.            — President
Cruz, Rosalia
Davis, Bill
Duenas, Ben
* Duenas, Rent, Dr.            — Vice President
Flores, Annie
Flong, Frank
Dombuid, Julia
Respeshamer, Carmen
Leon Guerrero, Shawn
Manibusan, Carmen
* Quinata, Maria (Mae)         — Treasurer
Quinata, Roman
Repadar, Cecilia
Salonia, Art
Salonia, Jo
* Sanchez, Flo                 — Corresponding Secretary
Sister Maria Dolores
Sister Marie Pierre
Sister Joseph Quinene
Sister Theresa Perez
* Bucalbto, Cepuna            — Historian
Sullivan, David              — Historian
* Sullivan, Pramilla          — Public Relation

MBSX

000224

**EXHIBIT** A

Tenorio, Grace Dawn
Tenorio, Marie
Torres, Ray
Ulloa, Juanita
Unpinged, Bert
# Untalan, Elizabeth — Recording Secretary

# — Execution Officers

090245

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | | |
|---|---|---|
| HOOLAE PAOA, | ) | Civil No. 06-1-1358-08 (KSSA) |
| | ) | (Other Non-Vehicle Tort) |
| Plaintiff, | ) | |
| vs. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| JACQUELINE A. MARATI, LINA'LA SIN | ) | |
| CASINO, and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on <u>JUN 1 8 2007</u> a copy of the foregoing document was duly served upon the following person at the address indicated below by hand delivery or by depositing the same in the United States mail, first class, postage prepaid:

<u>U.S. Mail</u>          <u>Hand Delivery</u>

BRUCE D. VOSS, ESQ.                                      ✓
MICHAEL C. CARROLL, ESQ.
Bays, Deaver, Lung, Rose & Baba
Alii Place, 16th Floor
1099 Alakea Street
Honolulu, Hawaii 96813

Attorneys for Plaintiff

DATED: Honolulu, Hawaii, _____JUN 1 8 2007_____.

LESLIE R. KOP
LAURA A. KUIOKA
Attorneys for Defendant
JACQUELIINE A. MARATI

G:\Paoa\Paoa PLEAD\RPTS-3.wpd

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HOOLAE PAOA,        ) | Civil No. CV 07-00370 JMS LEK |
| ) | (Other Non-Vehicle Tort) |
| Plaintiff,    ) | |
| vs.       ) | DECLARATION OF JACQUELINE |
| ) | A. MARATI |
| JACQUELINE A. MARATI,    ) | |
| LINA'LA SIN CASINO, and DOES ) | |
| 1-10,    ) | |
| ) | |
| Defendants.    ) | |
| _____ ) | |

## DECLARATION OF JACQUELINE A. MARATI

I, Jacqueline A Marati, do hereby declare as follows:

1.    I am one of the defendants in the above captioned matter and have personal knowledge of the facts contained herein.

2.    I have personal knowledge of and am competent to make this Declaration concerning the matters set forth below.

3.    I am a native Chamorro of Guam, and I was born and raised on Guam.

4.    I do not own any real or personal property in Hawaii. I do not have a bank account, telephone listing or a residential or business address in Hawaii.

5.     I am a member of Lina'la Sin Casino ("Lina'la").  Lina'la is a Guam non-profit organization which has as its purpose to lobby, campaign and oppose attempts to legalize gaming on Guam.

6.     In July 2006, certain individuals began to collect signatures of registered Guam voters in order to certify an initiative for the November 2006 election ballot in Guam.  The initiative, as proposed, would legalize the operation of slot machines in a facility known as the Guam Greyhound.  In an advertisement published in the Guam Pacific Daily News, organizers of the initiative offered to pay individuals circulating these petitions $5.00 for each signature obtained.  After learning of this campaign, Lina'la began to investigate the backgrounds of the initiative's organizers.

7.     Lina'la issued a Press Release to inform Guam voters and law enforcement departments of the background and history of the new owners of Guam Greyhound and the proponents of the initiative.  The Press Release was also issued to provide information to the Guam Election Commission, as the Guam Election Commission has jurisdiction to investigate irregularities in initiative petitions.  A true and correct copy of the press release is attached hereto as Exhibit "1".

8.     Lina'la sent the Press Release to the following Guam news

2

organizations: Pacific Daily News, Marianas Variety, Real Women Magazine, Pacific Voice, KUAM and K57.

9.    Lina'la also sent the Press Release to Frank Whitman, a freelance writer and Guam resident.

10.    The Press Release is addressed solely to, and intended solely for Guam voters and Guam law enforcement.  The Press Release was not directed at Hawaii or anyone in Hawaii, as Hawaii does not have any interest in whether slot machines are legalized at the Guam Greyhound facility.

11.    I live and work in Guam.  I will face a considerable burden in defending the lawsuit in Hawaii, which is a seven hour flight from Guam and involves a significant sixteen hour time difference.

12.    The twenty-eight members of Lina'la are all residents of Guam. Furthermore, all of the news organizations which the Press Release was sent to are in Guam.

13.    My Responsive Pretrial Statement filed on June 18, 2007 lists forty (40) witnesses.  Of the forty witnesses, thirty-six (36) are residents of Guam and two (2) are residents of Saipan.

14.    Plaintiff's Pretrial Statement lists thirty-two witnesses (32).  Of those thirty-two witnesses listed, at least sixteen of them reside in Guam.  Plaintiff

3

and Shawn Scott (both listed in Plaintiff's Pretrial Statement) reside in Saipan.

15.     Upon information and belief, Plaintiff Hoolae Paoa was in Guam to assist in organizing the signature collections for the petitions to place Proposal B on the Guam election ballot for the November 2006 Guam election.

16.     Upon information and belief, Plaintiff Hoolae Paoa is the manager of Tumon Partners, LLC, a limited liability company organized under the laws of the Commonwealth of the Northern Mariana Islands with its principal place of business in Saipan.

17.     Upon information and belief, Plaintiff Hoolae Paoa has connections to Guam, as he signed a verification in support of a Complaint on behalf of Tumon Partners, LLC regarding the purchase of certain real property in Guam.  The Complaint was filed in the Superior Court of Guam.  A true and correct copy of the Complaint is attached hereto as Exhibit "2".

18.     There are also two other related actions filed in Guam which arose out of the same press release:  Greyhound and John Baldwin v. Jacqueline A. Marati, Civil No. 0959-06 (Superior Court of Guam) and Guam Greyhound and John Baldwin v. Dorothy Brizill, Civil No. 0960-06 (Superior Court of Guam). Motions to dismiss based upon Guam's anti-SLAPP statute were filed.  The Court in Guam has already dismissed the second action.

4

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _Oct 10, 2007_, Guam, _____.

_Jacquline A. M_

Jacqueline A. Marati

# LINA'LA SIN CASINO

Jacqueline A. Marati
jmarati@ite.net
(671) 688-5305

## FOR IMMEDIATE RELEASE

## GREYHOUND BACKERS PART OF GROUP FINED $622,820 IN DC SIGNATURE BUYING SCHEME FOR SLOT LEGALIZATION

### GROUP DENIED OR FAILED TO OBTAIN GAMBLING LICENSES IN 5 STATES DUE TO FINANCIAL IRREGULARITIES

July 31, 2006, Hagatna, Guam.  After significant efforts to determine the backing of the Greyhound initiative petition in circulation, Lina' la Sin Casino brings this report in progress to the voting public and our law enforcement departments.

Individuals behind the current petition to legalize slot machines only at Greyhound have a history of coming in to a distressed race track facility, financing a rushed signature buying drive, getting the slots legalized and then selling the property.

Previous reports have the group reportedly spending millions in the effort.  In Guam, that effort would cost around $25,000.

The individuals include:

**John K. Baldwin** – Principal of GG Acquisitions II, now 99% owners of Greyhound. Owner of Bridge Capital.  Baldwin, as reported in the Washington Times, was a partner in a company that in the late 1990s owned gambling halls in South Carolina that failed to pay taxes and broke state gaming rules.  He has reportedly financed failed attempts to get gambling licenses.  He was also behind the failed Washington DC initiative to legalize slot machines.

Baldwin has reportedly been seen in Guam at political functions and fundraisers.

**Shawn Scott** also owner of Bridge Capital (See also Robert Newell below.)

EXHIBIT

" 1 "

PENGAD 800-631-6989

Scott sought a full Nevada license but withdrew it in 1997 after a member of the Nevada Gaming Control board characterized his accounting practices as "smoke and mirrors."

In 1999, Scott bought Delta Downs, a struggling racetrack in rural Louisiana. He persuaded local voters to approve the installation of slot machines, but the Louisiana Racing Commission's questioning of his finances led Scott to sell the track.

In 2002, Scott launched a $1.5million drive to legalize slot machines at a tiny race track in Bangor Maine, winning the statewide vote in November. When the Maine Harness Racing Commission was ready to deny the license, Scott sold his interest.

In 2004, Scott launched a drive to add slots to rural racetracks in Idaho, but that initiative failed. Since then, election clerks in three Idaho counties found evidence of forged signatures, with names appearing to have been copied from voter registration rolls and the telephone book.

Scott has been denied racing licenses in New Mexico and New York. He also sold a Maine track after a background investigation for the Maine Harness Racing Commission found that he and his associates had been the targets of numerous lawsuits and four tax liens since 1992 and had declared bankruptcy at least once.

**Robert L. Newell** – Here on Guam for the petition organizing drive, has worked with Bridge Capital in the failed attempt to bring slots to DC. The Washington Post reports he managed a California hotel that went bankrupt. A Las Vegas casino he owned failed to obtain a gambling license and was later torn down. A Spokane Washington investment firm of which he is an officer dissolved after states regulators accused it of swindling elderly, sick people out of their life savings. With Bridge USVI, Newell is chief operating officer and director of capital markets, while Baldwin is the President.

Newell was the organizer behind the failed Washington DC slots scheme.

**Victoria Scott** – mother of Shawn Scott, here in Guam to organize signature gathering effort, and an active participant in Bridge Capital's activities.

**Hoolae Paoa** – currently in Guam to organize the signature Drive. He is a convicted felon with a history of convictions since 1978. Offenses include thefts, domestic violence and assault, criminal contempt of court.

**Bridge Capital (USVI Investment LLC** – Virgin Islands Company, who together with **North Atlantic Investments** have organized heavily funded signature buying drive. They reportedly paid more than $617,000 to try to get a slots referendum on the Washington DC ballot. Failed when thrown out by the DC Board.

The Washington Post and the Washington Times reports the following:

Baldwin/Scott have been denied or failed to obtain gambling licenses in five states where regulators found evidence of financial mismanagement, irregular accounting practices and hidden partnerships.

In 2004, Baldwin/Scott/Newell were involved in a signature buying scheme to get a Video Lottery Terminal Initiative in Washington DC. The petition was thrown out after DC anti casino activists challenged the petitions and brought them before the DC Election Board.

The Washington DC Board of Elections and Ethics Memorandum and Opinion reads in part that the examination into the circumstances surrounding the Initiative petition circulation process "revealed significant and pervasive irregularities and improprieties of a magnitude never previously experienced in this jurisdiction. The illegal activities compromised, and made a mockery of, the integrity of the electoral process that the Board is charged with protecting. Accordingly, a fine in the amount of $622,820 is wholly justified" (see dcwatch.com).

In brief, petition circulators were found to be NOT from the election area, petition circulators were found NOT to be present during the signature gathering process, and many signatures were found to have been forged.

The citizen groups which oppose this initiative have hereby called on this Territory's officials as follows:

1. Guam Election Commission, Gerald Taitano:  We have written the Guam Election Commission and its legal counsel Cesar Cabot to produce the submitted petitions to verify petition circulators and signatures.
2. Guam Attorney General, Douglas Moylan:  We will write the Attorney General to issue a temporary restraining order on the petition gathering process to investigate those signatures submitted with the objective of verifying those signatures, in view of the past violations committed by members of this organization.

The anti Greyhound initiative group is also cautioning individuals who have been circulating these petitions:  if you are signing these petitions indicating that you are collecting these signatures, and you were not present for these signatures, you may be prosecuted, imprisoned or fined.

Finally, it has been reported that John Paul Calvo, formerly of eccomm, and son of John and Janet Calvo, has been hired on as Director of Marketing for Greyhound.

FILED
SUPERIOR COURT
OF GUAM

'07 FEB -9 PM 3:36

CLERK OF COURT

BY:_____

1  DANIEL J. BERMAN
   BERMAN O'CONNOR & MANN
2  Suite 503, Bank of Guam Building
   111 Chalan Santo Papa
3  Hagatna Guam 96910
   Telephone No.: (671) 477-2778
4  Facsimile No.: (671) 477-4366

5  Attorneys for Plaintiff

6              IN THE SUPERIOR COURT OF GUAM

CV 0169-07

7  TUMON PARTNERS, LLC and        )   CIVIL CASE NO. _____
   HEE K. CHO,                    )
8                                 )
                      Plaintiffs, )
9            v.                   )   VERIFIED COMPLAINT AND
                                  )   APPLICATION FOR TEMPORARY
10 KEVIN SHIN,                    )   RESTRAINING ORDER
                                  )
11                     Defendant. )
   _____)

12       Plaintiffs Tumon Partners, LLC ("TPLLC"), and Hee K. Cho ("Cho"), on personal

13 knowledge as to matters in which they were directly involved, and on information and belief

14 as to all other matters, file this Complaint and Application for Temporary Restraining Order

15 (the "Complaint"), as follows:

16                              I.

17                 JURISDICTION AND PARTIES

18     1.   This Court has jurisdiction over this matter pursuant to 7 G.C.A. §§ 3105 and

19 4101.

20     2.   Plaintiff TPLLC is a limited liability company organized under the laws of the

21 Commonwealth of the Northern Mariana Islands, with its principal place of business in

22 Saipan, CNMI.

23     3.   Plaintiff Cho is a resident of Guam.

24     4.   Defendant Kevin Shin ("Shin") is a resident of Guam.

25

26

27

28 E:\Jean\Plds\DJB\Tumon Partners v. Shin\complaint.wpd

EXHIBIT
"2"

1  TUMON PARTNERS, LLC v. KEVIN SHIN
   VERIFIED COMPLAINT AND APPLICATION
2  FOR TEMPORARY RESTRAINING ORDER

3  ===============================================================

4                                  II.

5                        APPLICABLE FACTS

6      **A.    Shin Files Suit Over Right To Purchase Real Property.**

7          5.    On December 12, 2005, Defendant Shin filed a lawsuit in the Superior Court

8  of Guam against Fujita Kanko Guam, Inc. ("Fujita") (Civil Case No. CV 1240-05) ("the

9  Litigation").

10         6.    In the Litigation, Defendant Shin alleged that he had a contract to purchase

11 certain real property from Fujita in Tumon, Guam ("the Property"), and that Fujita had failed

12 and refused to sell him the Property.

13         7.    The original complaint in the Litigation stated claims for anticipatory breach

14 and repudiation, specific performance, breach of contract and damages. Defendant Shin also

15 filed and recorded a *lis pendens* on the Property.

16     **B.    Shin, Cho And TPLLC Enter Agreement Regarding The Litigation And**

17             **The Property.**

18

19         8.    On or about May 25, 2006, Defendant Shin, and Plaintiff Cho, and TPLLC

20 entered a Memorandum of Agreement concerning the Property and the Litigation, which is

21 attached hereto as Exhibit "A" (the "MOA").

22         9.    In the MOA, Defendant Shin granted Plaintiffs Cho and TPLLC the right to

23 purchase the Property.

24         10.   In exchange for the grant of the right to purchase part of the Property, Plaintiff

25 TPLLC agreed to fund the costs of the Litigation.

26         11.   The MOA specifically grants Plaintiffs Cho and TPLLC, jointly, the right to

27 make "all significant and material decisions regarding the Litigation, including settlement."

28 E:\Jean\Plds\DJB\Tumon Partners v. Shin\complaint.wpd

1  TUMON PARTNERS, LLC v. KEVIN SHIN
   VERIFIED COMPLAINT AND APPLICATION
2  FOR TEMPORARY RESTRAINING ORDER

3  ================================================================

4      12.   The MOA further provides that Plaintiffs Cho and TPLLC will indemnify Shin
5  for any liability or costs arising from the Litigation.

6      13.   Finally, the MOA provides that "Richard Pipes shall represent Cho, Shin and
7  TPLLC going forward."

8  **C.   Shin Breaches The MOA.**

9      14.   On February 8, 2007, Defendant Shin faxed a letter to Pipes and to co-counsel
10  Deborah Deitsch-Perez, purporting to terminate their legal representation of him, in direct
11  contradiction of the MOA.  That letter is attached hereto as Exhibit "B".

12      15.   In the letter, Defendant Shin claims that he is concerned about the fact that all
13  decisions regarding the Litigation are being made by Plaintiffs Cho and TPLLC, despite the
14  fact that the MOA specifically provides that Plaintiffs Cho and TPLLC will control the
15  Litigation.

16      16.   Additionally, on February 8, 2007, Louis Yanza filed a Notice of Appearance
17  and Motion for Substitution of Counsel on behalf of Shin.

18      17.   Upon information and belief, Defendant Shin has professed to have settled or
19  intends to settle the litigation against Fujita, again in direct contradiction of the terms of the
20  MOA.

21                          **COUNT ONE:**

22  **TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

23

24      18.   Plaintiffs incorporate each of the allegations set forth above as if fully stated
25  herein.

26      19.   The conduct detailed above creates a threat of immediate and irreparable harm
27  that, among other things, involves the possible dismissal of the Litigation and the release of

28  E:\Jean\Plds\DJB\Tumon Partners v. Shin\complaint.wpd

1  TUMON PARTNERS, LLC v. KEVIN SHIN
   VERIFIED COMPLAINT AND APPLICATION
2  FOR TEMPORARY RESTRAINING ORDER

3  ================================================================

4  the *lis pendens* on the Property. If the *lis pendens* is released and the Litigation dismissed

5  with prejudice, Cho and TPLLC may well have no means to enforce their rights to purchase

6  the Property. The Property is unique and irreplaceable, and therefore Plaintiffs have no

7  adequate remedy at law if the settlement is allowed to proceed. Plaintiffs have a substantial

8  likelihood of success on the merits and the balance of the equities weighs heavily in

9  Plaintiffs' favor.

10      20.    Plaintiffs are therefore entitled to a temporary restraining order staying the

11  litigation so that no deadlines are missed, enjoining the dismissal of the Litigation, and the

12  release of the lis pendens, and, after notice and hearing, a preliminary injunction enjoining

13  any action with respect to the Litigation or the lis pendens pending resolution of this lawsuit.

14      WHEREFORE, Plaintiffs Cho and TPLLC pray for judgment as hereafter set forth.

15                          COUNT TWO:

16                      SPECIFIC PERFORMANCE

17

18      21.    Plaintiffs incorporate each of the allegations set forth above as if fully stated

19  herein.

20      22.    At the time Plaintiffs Cho, TPLLC and Shin entered into the MOA, the

21  consideration Plaintiffs TPLLC and Cho were to pay under the MOA was adequate and the

22  MOA is fair and reasonable as to Defendant Shin.

23      23.    Plaintiffs Cho and TPLLC have fulfilled their obligations under the MOA by

24  paying all costs and attorneys' fees connected with the Litigation and by making all

25  necessary decisions to direct the Litigation as provided in the MOA.

26      24.    Plaintiffs Cho and TPLLC have thus performed all conditions, covenants, and

27  promises required by them on their part to be performed in accordance with the terms and

28  E:\Jean\Plds\DJB\Tumon Partners v. Shin\complaint.wpd

1  TUMON PARTNERS, LLC v. KEVIN SHIN
   VERIFIED COMPLAINT AND APPLICATION
2  FOR TEMPORARY RESTRAINING ORDER

3  ================================================================

4  conditions of the MOA.  Plaintiffs Cho and TPLLC remain ready and willing to fulfill all

5  terms of the MOA applicable to them by continuing to fund the Litigation.

6        25.    Defendant Shin has breached the MOA by purporting to retain new counsel,

7  and, on information and belief, by purporting to settle the Litigation with the intention of

8  dismissing the Litigation and releasing the *lis pendens* on the Property.

9        26.    Plaintiffs Cho and TPLLC have no adequate remedy at law other than for

10 specific enforcement of the agreement because the agreement relates to the sale of real

11 property and money damages are presumed inadequate for its breach.  Plaintiffs Cho and

12 TPLLC will suffer great and irreparable injury if Defendant Shin is allowed to settle or

13 dismiss the Litigation or to release the lis pendens, as either would radically affect the rights

14 Plaintiffs Cho and TPLLC have in the Property.

15       27.    Accordingly, Plaintiffs Cho and TPLLC demand that the MOA be specifically

16 enforced and that Defendant Shin cede control of the Litigation to Plaintiffs Cho and

17 TPLLC.

18       WHEREFORE, Plaintiffs Cho and TPLLC pray for judgment as hereafter set forth.

19                              **COUNT THREE:**

20 **ALTERNATIVELY, ACTION FOR DAMAGES FOR BREACH OF CONTRACT**

21

22       28.    Plaintiffs incorporate each of the allegations set forth above as if fully stated

23 herein.

24       29.    Defendants Shin's failure and refusal to perform his obligations under the

25 MOA as alleged herein, including, but not limited to, hiring new counsel in an effort to settle

26 the Litigation, constitutes a breach of the MOA.

27       30.    Because of Defendant Shin's breach of the MOA, Plaintiffs Cho and TPLLC

28 E:\Jean\Plds\DJB\Tumon Partners v. Shin\complaint.wpd

1  TUMON PARTNERS, LLC v. KEVIN SHIN
   VERIFIED COMPLAINT AND APPLICATION
2  FOR TEMPORARY RESTRAINING ORDER

3  ================================================================

4  have suffered general, consequential, and compensatory damages, including, but not limited

5  to, damages for lost profits, attorneys' fees and expenses, prejudgment interest, future losses,

6  and loss of bargain damages in amounts to be proven at trial but not less than $8,000,000.

7  WHEREFORE, Plaintiffs Cho and TPLLC pray for judgment as hereafter set forth.

8  **PRAYER FOR RELIEF**

9

10  WHEREFORE, Plaintiffs Cho and TPLLC pray for judgment against Defendant Shin

11  as follows:

12  1.    As to the First Cause of Action, for a temporary restraining order and

13  preliminary injunction preventing Defendant Shin from taking any action with respect to the

14  Litigation or the lis pendens;

15  2.    As to the Second Cause of Action, for an order that Defendant Shin

16  specifically perform the MOA and allow Plaintiffs Cho and TPLLC to make all decisions

17  regarding the Litigation;

18  3.    As to the Third Cause of Action, in the event the Court does not order specific

19  performance of the MOA, for damages, as described above, in amounts to be proven at trial

20  but not less than $8,000,000;

21  4.    As to the Third Cause of Action, pre- and post-judgment interest on the

22  damages proven at trial at the legal rate until fully paid;

23  5.    As to all Causes of Action, costs incurred in this action; and

24  6.    As to all Causes of Action, any other and further relief that the Court considers

25  proper even though not requested herein.

26

27

28  E:\Jean\Plds\DJB\Tumon Partners v. Shin\complaint.wpd

1  TUMON PARTNERS, LLC v. KEVIN SHIN
   VERIFIED COMPLAINT AND APPLICATION
2  FOR TEMPORARY RESTRAINING ORDER

3  =====================================================================

4      Dated this 9th day of February, 2007.

5

6                                    BERMAN O'CONNOR & MANN
                                     Attorneys for Plaintiff

7

8                          By:    _Daniel J Berm_____

9                                  DANIEL J. BERMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  E:\Jean\Plds\DJB\Tumon Partners v. Shin\complaint.wpd

Shin v. Fujita Kanko Guam, Inc.
Security Title, Inc. v. Fujita Kanko Guam, Inc. and Kevin Shin
Civil Case Nos. CV1240-06 and CV0001-06
Verified Complaint and Application for Temporary Restraining Order
Page 8

## VERIFICATION

I, Hoolae Paoa, am the Manager of Tumon Partners, LLC, Plaintiff in the above-entitled

action. I have read the foregoing Complaint And Application For Temporary Restraining Order

and know the contents thereof. The same is true of my own knowledge, except as to those

matters which are therein alleged on information and belief, and as to those matters, I believe

them to be true.

I declare under penalty of perjury under the laws of Guam that the foregoing is true and

correct and that this declaration was executed at Phuket, Thailand.

Date: February 9, 2007        _____

                                                HOOLAE PAOA

# MEMORANDUM OF AGREEMENT

This Agreement made this 15 day of May, 2006, by and between Hee K. Cho ("Cho"), Kevin Shin ("Shin"), and Tumon Partners LLC ("TPLLC").

WHEREAS, Shin and Fujita Kanko Guam, Inc. ("Fujita") signed that certain Agreement for Sale of Real Property ("Fujita Agreement") dated October 12, 2005, for the purchase of those certain real properties, twenty parcels in all, (the "Property") which formerly comprised the grounds upon which the Fujita Hotel was located in Tumon, Guam, the legal description of which is attached hereto as Exhibit "A" and incorporated herein by this reference;

WHEREAS, Cho has acquired certain rights of Shin under the Fujita Agreement and Shin has retained the right to purchase a portion of the Property for $1,000,000, pursuant to an agreement between Cho and Shin (the "Cho/Shin Agreement") dated January 13, 2006, by which Cho obtained, among other things, the right to market the remaining portions of the Property;

WHEREAS, Fujita refused to comply with the Fujita Agreement and close the sale of the Property to Shin and/or his designee(s);

WHEREAS, Shin filed suit against Fujita in the Superior Court of Guam (the "Litigation") for anticipatory breach of contract, specific performance, breach of contract and damages and filed and recorded a *lis pendens* concerning the Property;

WHEREAS, Shin has incurred, and continues to incur, significant sums for

Page 1 of 6

EXHIBIT " A "

attorney's fees and costs in the Litigation and desires that others agree to assume the cost and expense of the Litigation and any resulting exposure from any adverse result arising out of the Litigation;

WHEREAS, TPLLC has entered into a Memorandum of Agreement with Cho (the "MOA") dated March 11, 2006, whereby TPLLC agreed to purchase a certain portion of the Property for $4,650,000, as described in the MOA, when the Property is acquired and Cho has agreed to purchase the remaining portion of the Property for $2,600,000, the agreed sums by all parties totaling $8,250,000, the purchase price under the Fujita Agreement;

WHEREAS, in contravention of the Fujita Agreement, Fujita has sold the Property to several parties and, in turn, those parties have sold certain parcels in the Property to other parties. The parties hereto understand that an amended complaint will need to be filed in the Litigation naming the subsequent buyers of the Property as defendants and expanding upon the causes of action and requests for relief; *as well as otherwise discovery.*

WHEREAS, Cho, Shin, and TPLLC have reached an agreement regarding the obligations of the parties hereto to pay for all expenses and liability of the Litigation and to account for any discounts or reductions to the sales price under the Fujita Agreement which may be obtained in the Litigation, through settlement or otherwise; and

WHEREAS, Cho, Shin and TPLLC wish to memorialize their agreement in writing for such matters;

Page 2 of 6

WHEREFORE, the parties hereby agree as follows:

1.    Effective as of May 1, 2006, all costs and attorney's fees incurred in the

      Litigation shall be the responsibility of and paid promptly by TPLLC. Shin

      shall remain as the named Plaintiff in the Litigation unless the joinder of

      Cho and/or TPLLC is required for the proper and complete resolution of

      the Litigation.   All significant and material decisions regarding the

      Litigation, including settlement, shall be made jointly by Cho and TPLLC.

      However, Shin shall at all times be kept reasonably informed regarding the

      course and status of the Litigation.   Further, TPLLC agrees to indemnify

      Shin for any liability and/or costs arising out of any adverse decision in the

      Litigation or any appeal therefrom including, but not limited to, attorney's

      fees and costs of any party to the Litigation.

2.    The parties hereto agree to execute a joint representation agreement with

      counsel chosen by Cho and TPLLC which may incorporate certain of the

      terms and conditions contained herein. The parties hereto understand and

      agree that such joint representation may include a waiver of conflict of

      interest among the parties and counsel.

3.    The parties acknowledge that through the course of the Litigation, whether

      by settlement or otherwise, there may arise the opportunity to purchase the

      Property for less than the purchase price under the Fujita Agreement (a

Page 3 of 6

May 31 06 02:27p                                                                p.6

May 12 06 02:22p                                                                p.5

"Discount"). In the event a Discount is obtained, the parties hereto agree that Shin shall not share in the Discount, Cho will be entitled to forty-four per cent (44%) of the Discount, and TPLLC shall be entitled to fifty-six per cent (56%) of the Discount. Such Discount shall be deducted, in the proportions provided herein, from those amounts the parties hereto have agreed to pay for their respective portions of the Property, pursuant to the Cho/Shin Agreement and the MOA, each of which are incorporated herein by this reference.

4.     This Agreement may not be modified, discharged or changed in any respect whatsoever, except by a further agreement in writing executed by Cho, Shin and TPLLC.

5.     This Agreement shall be considered as "CONFIDENTIAL" and shall not be disclosed to any third party prior to closing, other than attorneys, affiliates, or as required by law or court order. [initials]

6.     This Agreement shall be governed by and construed in accordance with the laws of Guam without regard to principles of conflict of law. All payments to be made under this Agreement shall be made in lawful money of the United States of America. Time is of the essence of this Agreement. This Agreement and all rights of the parties arising hereunder may not be assigned or otherwise transferred, in whole or in part, without the prior written consent of all other parties. This Agreement, all attached exhibits,

Page 4 of 6

and all related documents referred to in this Agreement, constitute the entire agreement between the parties. There are no oral or parol agreements which are not expressly set forth in this Agreement.

7.    TPLLC acknowledges and understands that it has the right to consult counsel in this matter and has done so or has decided that there is no need to do so. TPLLC further acknowledges that the Law Offices of Richard A. Pipes does not represent it and that it has received no advice or representations from such counsel relating to this matter, *however, Richard Pipes shall represent the Cho, Shin and TPLLC going forward.*

8.    All notices to be given under this Agreement shall be in writing and sent via facsimile and mailed postage prepaid by certified or registered mail, return receipt requested, or by personal delivery to the address indicated below or at other places designated by Cho, Shin or TPLLC in a written notice given to the other. Notices shall be deemed served upon receipt of the facsimile, four (4) days after the date of mailing, or upon personal delivery.

9.    *This agreement shall not expire until one year following the resolution of all litigation in the case or one year following the disposition of all assets involved, whichever is later.*

To Cho and Shin:    c/o JMSH, LLC
                    999 South Marine Corps Drive
                    Tamuning, Guam 96913
                    Fax No.: (671) 649-3895

With a copy to:    Richard A. Pipes, Esq.
                   Law Offices of Richard A. Pipes
                   865 S. Marine Dr., Suite 201
                   Tamuning, Guam 96913

Page 5 of 6

be unlawful.

May 31 06 02:28p                                                                      p.8

May 12 06 02:22p                                                                      p.7

Fax No.: (671) 646-2203

To TP/LLC:       Tumon Partners, LLC
                 P.O. Box 7777
                 Frederiksted   VI.  00841
                 Fax No.: (340) 772-0007

With a copy to:  Deborah Darkel Perez
                 _____
                 _____

Fax No.: _____

_____
HEE K. CHO

_____
KEVIN SHIN


TUMON PARTNERS, LLC

By: _____
    STEPHEN KESSEL, duly authorized
    representative


Page 6 of 6

February 8, 2007

<u>VIA FACSIMILE – 646-2203</u>

Richard A. Pipes, Esq.
LAW OFFICES OF RICHARD A. PIPES
Suite 201, Orlean Pacific Plaza
865 S. Marine Corps Drive
Tamuning, Guam 96913

<u>VIA FACSIMILE – (214) 560-2215</u>

Deborah Deitsch-Perez, Esq.
LACKEY HERSHMAN, LLP
3102 Oak Lawn Ave., Suite 777
Dallas, Texas 75219

Dear Mr. Pipes and Ms. Deitsch-Perez:

Please consider this letter as my formal notice of the termination of your legal services with respect to your representation in *Kevin Shin v. Fujita Kanko Guam, Inc.*, Civil Case No. CV1240-05 and *Security Title, Inc. v. Fujita Kanko Guam, Inc., et al.* Civil Case No. CV0001-06.



You are also hereby instructed not to take any further action in this case. A Substitution of Counsel will soon be forwarded to your office. Please be so kind as to execute the Substitution of Counsel.

Sincerely,

Kevin Shin



**EXHIBIT "B"**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HOOLAE PAOA, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| JACQUELINE A. MARATI, | ) |
| LINA'LA SIN CASINO, and DOES | ) |
| 1-10, | ) |
| | ) |
| Defendants. | ) |

Civil No. 07-00370 JMS-LEK
(Other Non-Vehicle Tort)

CERTIFICATE OF SERVICE

## CERTIFICATE OF SERVICE

I hereby certify that, on ___OCT 17 2007___ and by the methods
of service noted below, a true and correct copy of the foregoing was duly served
on the following persons at their last known addresses.

Served Electronically through CM/ECF:

BRUCE D. VOSS, ESQ.   bvoss@legalhawaii.com

MICHAEL C. CARROLL, ESQ.   mcarroll@legalhawaii.com

Attorneys for Plaintiff

DATED:  Honolulu, Hawaii, ___OCT 17 2007_____.

/s/ Leslie R. Kop_____
LESLIE R. KOP
LAURA A. KUIOKA
Attorneys for Defendant
JACQUELINE A. MARATI

G:\Paoa\Paoa PLEAD\mot for change of venue.wpd