Of Counsel:

BAYS, DEAVER, LUNG,
ROSE & BABA

BRUCE D. VOSS          6532-0
Attorney at Law
A Law Corporation
MICHAEL C. CARROLL     7583-0
Alii Place, 16th Floor
1099 Alakea Street
Honolulu, HI  96813
Telephone: (808) 523-9000

Attorneys for Plaintiff
HOOLAE PAOA

```
                                1ST CIRCUIT COURT
                                STATE OF HAWAII
                                     FILED

                                2007 JAN -8 PM 3: 29

                                   B. TERAOKA
                                     CLERK
```

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| HOOLAE PAOA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>JACQUELINE A. MARATI, LINA'LA SIN CASINO, and DOES 1-10,<br><br>　　　　　　Defendants. | ) CIVIL NO. 06-1-1358-08 (KSSA)<br>) (Other Non-Vehicle Tort)<br>)<br>) PLAINTIFF HOOLAE PAOA'S<br>) **MEMORANDUM IN OPPOSITION** TO<br>) DEFENDANT JACQUELINE MARATI'S<br>) MOTION TO DISMISS FOR LACK OF<br>) PERSONAL JURISDICTION AND<br>) IMPROPER VENUE; DECLARATION OF<br>) HOOLAE PAOA; DECLARATION OF<br>) MICHAEL C. CARROLL; EXHIBITS A-K;<br>) CERTIFICATE OF SERVICE<br>)<br>) Hearing:<br>) Date: January 16, 2007<br>) Time: 10:00 a.m.<br>) Judge: Honorable Karen S.S. Ahn<br>)<br>) No trial date set. |

**EXHIBIT 1**

TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| | A. | The Defendant Knew, Or Should Have Known, That Her Publication Would Cause Damage To Mr. Paoa In His Home State Of Hawaii | 2 |
| | B. | Mr. Paoa Lives And Works In Hawaii And Has No Contacts With Guam | 3 |
| | C. | The Defendant Engaged In A Calculated Effort To Disseminate The Defamatory Press Release Toward The Forum State Of Hawaii With A Reckless Disregard As To The Truth Or Falsity Of Her Statements | 4 |
| | D. | The Defendant Mass Publishes Her Defamatory Press Release With The Intent That It Be Widely Received And Cause Damage To Mr. Paoa In The Forum | 5 |
| III. | DISCUSSION | | 9 |
| | A. | Defendant Purposefully Directed Her Defamatory Statements Towards The Forum | 9 |
| | B. | Mr. Paoa's Claims Arise Out Of Defendant's Defamatory Statements Directed Toward The Forum | 13 |
| | C. | Personal Jurisdiction Is Reasonable | 13 |
| | | 1. Defendant Purposefully Interjected Herself In The Forum | 14 |
| | | 2. Defendant's Burden in Litigating In Hawaii Is Minimal | 15 |
| | | 3. There Are No Sovereignty Issues In This Case | 15 |
| | | 4. Hawaii Has A Compelling Interest In Redressing Torts Committed Against Its Residents | 15 |
| | | 5. The Most Efficient Resolution Is In Hawaii | 16 |
| | | 6. Convenient and Effective Relief for Mr. Paoa Is In Hawaii | 16 |

i

|      | 7. | Alternative Forum........................................................ | 16 |
| IV.  | MR. PAOA SHOULD BE ENTITLED TO CONDUCT FURTHER DISCOVERY WITH REGARDS TO DEFENDANT'S CONTACTS WITH THE FORUM....................................................... | | 17 |
| V.   | CONCLUSION............................................................................ | | 18 |

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ............................................................. 13

*Brainard v. Governors of the University of Alberta*, 873 F.2d 1257
(9th Cir. 1989) ........................................................................................... 1, 11, 12, 13

*Burger King*, 471 U.S. at 472-76, 105 S. Ct. 2174 ............................................................ 9

*Core-Vent Corp. v. Nobel Industrial AB*, 11 F.3d 1482 (9th Cir.1993) ....................... 9, 14

*Cummings v. Western Trial Lawyers Association*, 133 F. Supp. 2d 1144 (D. Ariz. 2001) ........................................................................................................................ 9, 13

*Edias Software International, L.L.C. v. Basis International Ltd.*, 947 F. Supp. 413 (D. Ariz. 1996) ................................................................................................................ 12

*Gordy v. Daily News, L.P.*, 95 F.3d 829 (9th Cir. 1996) ............................... 1, 10, 12, 13, 14

*Harris Rutsky & Co. Insurance Serv. Inc. v. Bell & Clements Limited*, 328 F.3d 1122 ................................................................................................................................ 14

*Lake v. Lake*, 817 F.2d 1416 (9th Cir.1987) ...................................................................... 9

*Nicosia v. De Rooy*, 72 F. Supp. 2d 1093 (N.D. Cal. 1999) ........................ 1, 11, 12, 13, 15

*Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1988) ......... 12, 15, 16

*Pure, Ltd. v. Shasta Beverages, Inc.*, 691 F. Supp. 1274 (D. Hawaii 1988) ...................... 10

*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir. 1988)) .................. 14, 15

*Sutera v. Schering Corp.*, 73 F.3d 13 (2d Cir. 1995) ......................................................... 17

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199
(9th Cir. 2006) ................................................................................................... 10, 12

**STATE CASES**

*Cowan v. First Insurance Co. of Hawaii, Ltd.*, 61 Haw. 644, 608 P.2d 394 (1980) ........... 9

*Crutchfield v. Hart*, 2 Haw. App. 250, 630 P.2d 124 (1981) ............................................ 17

*Gamino v. Greenwell*, 2 Haw. App. 59, 625 P.2d 1055 (1981) .......................................... 17

*Moore v. Allstate Insurance*, 6 Haw. App. 646, 736 P.2d 73 (1987) ................................... 2

*Shaw v. North American Title Co.*, 76 Hawaii 323, 876 P.2d 1291 (1994) ........................ 2

*Wilder v. Tanouye*, 7 Haw. App. 247, 753 P.2d 816 (1988) ............................................... 17

**STATE RULES**

Hawaii Rules of Civil Procedure, Rule 56(f) ....................................................................... 17

PLAINTIFF HOOLAE PAOA'S MEMORANDUM IN OPPOSITION TO
DEFENDANT JACQUELINE MARATI'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

Plaintiff Hoolae Paoa ("Paoa"), by and through his counsel, Bays, Deaver, Lung, Rose & Baba, opposes Defendant Jacqueline A. Marati's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Motion to Dismiss").

I.  INTRODUCTION

This case arises out of the Defendant's calculated actions in publishing a press release with the intention that it harm Mr. Paoa's reputation and be widely disseminated and received in Hawaii. The Defendant's publication was without any consideration as to the truth of falsity of her statements and in complete disregard as to the effects of her statements in Mr. Paoa's home State of Hawaii. Mr. Paoa lives in Hawaii, works in Hawaii, his family is in Hawaii, and he has absolutely no contact with Guam. See Declaration of Hoolae Paoa. He has never met the Defendant and has never had any contact with her. Id. The allegation that he was involved in a fraudulent scheme to solicit votes for a campaign to legalize slot machines in Guam is a complete fabrication. Id. While the claim is false, Mr. Paoa also had absolutely no involvement in any efforts to legalize slot machines in Guam, and was never in Guam for that purpose as the Defendant falsely alleges in her defamatory press release and in her Affidavit in support of this Motion to Dismiss. Id.

It is well settled that where a defendant's actions are calculated to cause damage in the forum state and do, in fact, cause damage in the forum, jurisdiction is proper. Gordy v. Daily News, L.P., 95 F.3d 829, 833 (9th Cir. 1996); Nicosia v. De Rooy, 72 F. Supp. 2d 1093, 1099 (N.D. Cal. 1999); Brainard v. Governors of the University of Alberta, 873 F.2d 1257, 1259 (9th Cir. 1989). In this case, Defendant, by her mass publication directed at the forum state,

knew or should have known that all of the damage caused to Mr. Paoa would be suffered in his home State of Hawaii. Mr. Paoa lives and works in Hawaii and has no contacts to Guam. Personal jurisdiction is proper in Hawaii, and this Motion should be denied.

II. BACKGROUND

In reviewing a Motion to Dismiss for lack of personal jurisdiction based on written submissions, all of the Plaintiff's allegations are "presumed true" and all "factual disputes" are decided in the Plaintiff's favor. Shaw v. North American Title Co. 76 Hawai'i 323, 327, 876 P.2d 1291, 1295 (1994). Under Hawaii law, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Moore v. Allstate Ins., 6 Haw. App. 646, 648, 736 P.2d 73, 76 (1987).

    A.    The Defendant Knew, Or Should Have Known, That Her Publication Would Cause Damage To Mr. Paoa In His Home State Of Hawaii

The Defendant is an experienced and savvy businesswoman and lobbyist. She was born in Guam, went to college in New York, and received a degree in Political Science. See Exhibit A, Deposition of J. Marati at p. 8 line 6-9. After graduating from college, the Defendant worked in New York for Chase Manhattan Bank as Corporate Officer, id. at p. 10, line 2-18, and worked in San Francisco for Wells Fargo Bank and Merchant Banking Group as a Corporate Banking Officer and Vice President. Id. at p. 10, line 19 to p. 13 line 4. The Defendant later worked for the Guam International Authority as the Chief of Administrative Services, id. at p. 14 line 10-15, and finally with the Bank of Guam as a Corporate Banking Officer, Special Assistant to the President, and Marketing and H.R. Administrator. Id. at p. 15 line 9 to p. 18 line 20. Additionally, the Defendant is the Spokesperson for Defendant Lina'La Sin Casino ("Lina'La"), and has been authorized to speak on behalf of Lina'La since 2004. Id. p. 26 line 17 to p. 27 line

34694-1

2

13, p. 29 lines 1-7. As the spokesperson for Lina'La, she has participated in "numerous outreach programs, meetings, advertising, [and] releases to inform and educate the public[.]" Id. p. 34 line 20-23.

The Defendant also has contacts with Hawaii and is familiar with local custom and politics. The Defendant took a three-day trip to Hawaii in the 1990's. See Exhibit B, Affidavit of J. Marati ¶ 5. Additionally, the Defendant traveled to Hawaii twice in 2005 as a member of the Board of Directors of Pacific Islanders in Communications ("PIC"), a national non-profit media arts corporation organized to advance and develop Pacific Island media content. Id. The Defendant is familiar with Hawaii custom and politics, has an in-depth knowledge of the news media, and knows the effects of broadcasting defamatory statements to the news media towards Hawaii and its effects on one of its residents.

B.   Mr. Paoa Lives And Works In Hawaii And Has No Contacts With Guam

Mr. Paoa was born in Hawaii, grew up in Hawaii, and currently resides in Hawaii. See Declaration of Hoolae Paoa. His family and close friends are all Hawaii residents. Id. Mr. Paoa works and conducts business in Hawaii. Id. Mr. Paoa has no contacts with Guam and has only traveled to Guam for layovers while traveling to other destinations. Id. Mr. Paoa does not own any property in Guam, nor does he operate or conduct any business in Guam. Id. Mr. Paoa has had absolutely no involvement in Guam politics or any plan to legalize casino type slot machines. Id. He was never in Guam for the purpose to "assist in organizing the signature collections for the petitions to place Proposal B on the ballot[,]" relating to slot machines at a race track in Guam as alleged by the Defendant. Id. Mr. Paoa does not know the Defendant, nor does he know any member of Defendant Lina'La Sin Casino. Id. The first time he ever heard of

either the Defendant or Linla'La was when he received the defamatory press release in Hawaii. Id.

    C.    The Defendant Engaged In A Calculated Effort To Disseminate The Defamatory Press Release Toward The Forum State Of Hawaii With A Reckless Disregard As To The Truth Or Falsity Of Her Statements

Although the Defendant and Mr. Paoa have never met, the Defendant engaged in a calculated effort to defame Mr. Paoa in his home State of Hawaii to further her pretextual cause of defeating a Guam bill. On July 26, 2002, the Defendant was blind copied on an anonymous email from a "John Baker." See Exhibit C, see also Deposition of J. Marati at 119 line 22 to p. 120 line 2. The email included defamatory references to Mr. Paoa, and references to several articles that were apparently selected by "John Baker." Id. The Defendant, however, had no idea who John Baker was, and made no effort to determine his identity. See Deposition of J. Marati at p. 114 line 5-13. Moreover, the Defendant had no idea where or how John Baker obtained the information in his email, id. at p. 112 line 25 to p. 113 line 2, nor did the Defendant make an effort to confirm the truth or falsity of the statements set forth in the email. Id. at p. 116 line 14-18. The Defendant did conduct a name search on Mr. Paoa, in which all she discovered was that he had some kind of relationship with the other persons identified in the anonymous email. Id. at p. 58 line 10-16.

Additionally, the Defendant did not know Mr. Paoa before receiving this anonymous email. See Deposition at p. 81 line 7-13. Based on the documents reviewed by the Defendant, however, the Defendant should have known that Mr. Paoa was a resident of Hawaii, or had a duty to inquire as to this fact. The references she relied on clearly indicated that Mr. Paoa was a resident of Hawaii. One reference relied on by the Defendant referred to Mr. Paoa as a "Hawaiian man," Id. at p. 167 line 23 to p. 168 line 5, another document indicated that Mr.

34694-1                                               4

Paoa was a "former Hawaii resident," id. at p. 170 line 19 to p. 171 line 2, and another article referred to Mr. Paoa as a "Hawaiian business associate," id. at p. 173 line 7-14. The Defendant ignored all the indications that Mr. Paoa was a resident of the State of Hawaii and that he would suffer injury in Hawaii by her mass publication. Id. at p. 173 line 25 to p. 174 line 3.

While the Defendant did nothing to confirm the truth or falsity of the statements in the anonymous email nor the identity or residence of Mr. Paoa, the Defendant immediately forwarded the defamatory statements regarding Mr. Paoa to at least six different people: Rizk Saad, Dr. Jose Cruz, Mark Baldyga, Monica Guzman, John Lee, and Jay Arriola. See Exhibit D, Deposition of J. Marati at p. 127 line 20 to 130 line 7. At least one of these recipients, John Lee, has ties to Hawaii, and is the Senior Vice President for First Hawaiian Bank in Guam. See Deposition of J. Marati at p. 128 line 20-23. Upon information and belief, the email was forwarded to other people that have additional contacts to Hawaii.

    D.    The Defendant Mass Publishes Her Defamatory Press Release With The Intent That It Be Widely Received And Cause Damage To Mr. Paoa In The Forum

On July 31, 2006, just five days after being blind copied on the email from John Baker, Defendant mass published a press release entitled "Greyhound Backers Part of Group Fined $622,820 in DC signature Buying Scheme for Slot Legalization, Group Denied or Failed to Obtain Gambling Licenses in 5 States Due To Financial Irregularities." See Exhibit E. The press release identified Mr. Paoa by name and falsely alleged that Mr. Paoa committed acts of moral turpitude and violated the law. See Complaint ¶ 6. The press release also included numerous false and defamatory allegations that other individuals associated with Mr. Paoa had participated in fraudulent schemes to legalize gambling, with the intention that these false and defamatory statements be imputed to Mr. Paoa's actions and character, and to falsely imply that

Mr. Paoa was participating in a fraudulent or unlawful scheme to legalize slot machines in Guam. Id.

As set forth in the Complaint, Defendant repeatedly published, circulated, reproduced, and disseminated the false and defamatory statements directly to persons in or residents of the State of Hawaii, with the intention that the defamatory statements would be circulated to persons in or residents of the State of Hawaii. Id. ¶ 7. Among other things, Defendant (1) transmitted the false and defamatory statements to people throughout Guam, including at least one Guam business headquartered in the State of Hawaii; (2) transmitted the false and defamatory statements to the news media with the intention that the statements be republished, broadcasted and ultimately received in the State of Hawaii; (3) emailed and/or transmitted the false and defamatory statements to residents of or persons in the State of Hawaii; and (4) caused to be posted the false and defamatory statements on the internet with the intention that the defamatory statements be read by persons in the State of Hawaii. Id.

The Defendant admits to sending the press release to the following news organizations to further her pretextual purpose: (1) Pacific Daily News; (2) Marianas Variety; (3) RW (Real Women) Magazine; (4) Frank Whitman (a free lance writer); (5) Pacific Voice; (6) KUAM; (7) K57; and (8) the Saipan Tribune.[1] See Deposition at p. 149 line 8 to p. 151 line 12; Exhibit B, Affidavit of J. Marati ¶ 8. With regards to at least the Pacific Daily News and the Marianas Variety, the Defendant expected that these news organizations would publish an article the substance of which containing the press release, and knew that these news organizations had

---

[1] During Ms. Marati's deposition, she testified that while there is a transmittal sending the press release to the Saipan Tribune, she was not sure if the press release was actually sent. Deposition at p. 149 line 8-16.

web pages in which articles would be displayed and made available to readers in Hawaii. See Deposition of J. Marati at p. 65 line 7-22, p. 68 line 19 to p. 69 line 4.

Several, if not all, of the news media recipients of the press release have a large number of Hawaii subscribers or readers. For example, the Pacific Daily News is Guam's largest newspaper and is owned by Gannett, the same news organization that owns the Honolulu Advertiser. See www.pressreference.com/Fa-Gu/Guam.html. Gannett has approximately 20,000 subscribers, id., some of whom are believed to be residents of Hawaii. For instance, the University of Hawaii, Chaminade University, and Hawaii Pacific University all subscribe to this publication. See Declaration of M. Carroll. See also Exhibit H. Additionally, articles from the Pacific Daily News are published on the internet at www.guampdn.com, available to residents in Hawaii. Similarly, the Marianas Variety is a Micronesian newspaper and is made available to readers throughout the Pacific Islands, including Hawaii. The Marianas Variety is available at least at the University of Hawaii Hamilton Library. Attached hereto as Exhibit I is a print out search from the Hamilton Library at the University of Hawaii Manoa Campus showing that this publication is available at this library. Additionally, articles from this newspaper are published on the internet at www.mvariety.com, available to residents in Hawaii. Finally, the Saipan Tribune is a Saipan newspaper. Upon information and belief, several Hawaii residents either subscribe or read articles regularly. Articles are also available on the internet to readers in Hawaii at www.saipantribune.com.

Defendant knew, or should have known, that her mass publication would reach and cause damage to Mr. Paoa in his home State of Hawaii. After the issuance of the press release, the substance of the press release, including the defamatory statements directed towards Mr. Paoa, were published in at least the Marianas Variety and the Pacific Daily News, as well as

on radio and television stations in Guam. See e.g., Exhibit F, Article entitled "Greyhound backers named", published in the Marianas Variety on August 1, 2006; see also Affidavit of J. Marati ¶ 8 (admitting that "[e]xcerpts of the Press Release were published on August 1 and 2, 2006 in the Marianas Variety and the Pacific Daily News, as well as on radio and television stations in Guam.") The defamatory statements were further available on the internet directly to readers in Hawaii. See e.g., Exhibit G, news article entitled "Slot Machine Backers' History Questioned", published and received on the internet from www.kuam.com.

As alleged in the Complaint, the false and defamatory statements were, in fact, received and read by persons in the State of Hawaii. Complaint ¶ 8. As an example, on January 4, 2006, Mr. Paoa was approached by a reporter from the Honolulu Star Bulletin on a completely unrelated business transaction in Hawaii. The reporter apparently read a reproduction of the Defendant's press release and proceeded to ask personal questions to Mr. Paoa concerning the Guam initiative to legalize slot machines and other matters that were published in the defamatory press release. See Declaration of Hoolae Paoa. Thus, Defendant has clearly met her objective and the defamatory press release has reached and caused damage to Mr. Paoa in the forum state. Furthermore, Defendant published and distributed her false and defamatory statements with the intent to cause great injury to Mr. Paoa's personal and professional reputation in the State of Hawaii, City and County of Honolulu, and to expose Mr. Paoa to hatred, contempt, ridicule, and obloquy throughout the State of Hawaii and the City and County of Honolulu. Id. ¶ 9. Defendant published and distributed the statements to further her own self-serving agenda, with callous and reckless disregard for the truth or falsity of the statements and the damage they would result to Mr. Paoa's reputation and business interests in the State of Hawaii. Id.

III.  DISCUSSION

Hawaii's long-arm statute, HRS § 634-35, extends jurisdiction to the maximum extent permitted by the due process clause of the Fourteenth Amendment. Cowan v. First Ins. Co. of Hawaii, Ltd., 61 Haw. 644, 649, 608 P.2d 394, 399 (1980). Thus, the only issue is whether the exercise of personal jurisdiction over Defendant comports with due process. The Ninth Circuit applies the following three-part test to determine whether specific jurisdiction is proper under the due process clause:

> (1) The nonresident defendant must purposely direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which *arises out of* or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

Cummings v. Western Trial Lawyers Ass'n, 133 F.Supp.2d 1144, 1152 (D. Ariz. 2001) (quoting Brink, 57 F.Supp.2d at 860 (emphasis added) (citing Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir.1993); Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987); Burger King, 471 U.S. at 472-76, 105 S.Ct. 2174.). Applying this test to the present case, jurisdiction is proper because the Defendant's actions were deliberately calculated to cause injury to Mr. Paoa in his home State of Hawaii and did, in fact, cause injury to Mr. Paoa in Hawaii. The Defendant has purposefully availed herself of the laws of this State based on her deliberate actions directed at the forum. Finally, it is reasonable for her to be subject to jurisdiction in this State based on her actions.

    A.    Defendant Purposefully Directed Her Defamatory Statements Towards The Forum

The first element of the specific jurisdiction test is met where a defendant's "only contact with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the

forum state." Core Vent Corp., 11 F.3d at 1485. In a defamation action, this first element is established when a defendant's "(1) intentional actions (2) expressly aimed at the forum state (3) caus[e] harm, the brunt of which is suffered-and which the defendant knows is likely to be suffered-in the forum state." Id. at 1486. The holding in Core Vent Corp. was recently clarified and expanded in Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1207 (9th Cir. 2006), where the Ninth Circuit recognized that "the 'brunt' of the harm need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." Id. Under the standard adopted by the Ninth Circuit and Hawaii courts, the defendant does not need to be personally in the State to establish jurisdiction, rather the Court will sustain jurisdiction provided the effects of the defendant's tortuous actions are felt in the forum. See Pure, Ltd. v. Shasta Beverages, Inc., 691 F.Supp. 1274, 1277 (D. Hawaii 1988) ("The Supreme Court of Hawaii has determined that a tortious act is committed within the State of Hawaii under Haw.Rev.Stat. § 634-35(a)(2) if the injury, or the injurious consequences of the allegedly tortious act, occurs within the state.") (citation omitted).

  Several courts have held personal jurisdiction proper under circumstances similar to the present case. For example, in Gordy v. Daily News, L.P., 95 F.3d 829, 833 (9th Cir. 1996), the Ninth Circuit held that personal jurisdiction existed in California even though the defendant only distributed 13 to 18 copies of its publication in California, which represented only 0.0017% of the paper's total circulation. The court reasoned that a publisher of a defamatory statement can be sued in a forum where "only a small portion" of the defamatory statements are distributed, and that a writer or editor could be subjected to jurisdiction for targeting a California plaintiff, even though the publisher's contacts with the state could not be attributable to them.