Westlaw.

87 F.Supp.2d 1060                                                                                      Page 1
87 F.Supp.2d 1060, 28 Media L. Rep. 1875
**(Cite as: 87 F.Supp.2d 1060)**

C
Miracle v. N.Y.P. Holdings, Inc.
D.Hawai'i,2000.

United States District Court, D. Hawai'i.
Nancy MIRACLE, aka Nancy Greene, aka Nancy Green, Plaintiff,
v.
N.Y.P. HOLDINGS, INC., dba The New York Post; Cindy Adams, Defendants.
**No. CIV.A.99-00535HG-FIY.**

March 14, 2000.

Hawaii resident brought state court defamation action against New York newspaper and columnist. On defendants' motion to dismiss or to transfer venue, the District Court, Gillmor, J., held that: (1) newspaper had sufficient contacts with Hawaii to satisfy purposeful availment factor of personal jurisdiction test; (2) Hawaii was proper venue for action; and (3) transfer of venue was not warranted.

Motion denied.
West Headnotes
**[1] Federal Civil Procedure 170A €→1825**

170A Federal Civil Procedure
　170AXI Dismissal
　　170AXI(B) Involuntary Dismissal
　　　170AXI(B)5 Proceedings
　　　　170Ak1825 k. Motion and Proceedings Thereon. Most Cited Cases
Once defendant moves to dismiss for lack of jurisdiction and presents evidence disputing personal jurisdiction, burden shifts to plaintiff to make prima facie showing via admissible evidence that personal jurisdiction exists. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A €→1825**

170A Federal Civil Procedure
　170AXI Dismissal
　　170AXI(B) Involuntary Dismissal
　　　170AXI(B)5 Proceedings
　　　　170Ak1825 k. Motion and Proceedings Thereon. Most Cited Cases
Motion to dismiss for lack of personal jurisdiction may be resolved on basis of declarations and discovery materials. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**[3] Constitutional Law 92 €→3964**

92 Constitutional Law
　92XXVII Due Process
　　92XXVII(E) Civil Actions and Proceedings
　　　92k3961 Jurisdiction and Venue
　　　　92k3964 k. Non-Residents in General. Most Cited Cases
　　(Formerly 92k305(5))

**Federal Courts 170B €→76.1**

170B Federal Courts
　170BII Venue
　　170BII(A) In General
　　　170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
　　　　170Bk76.1 k. In General. Most Cited Cases
　　(Formerly 170Bk76)
Federal court's exercise of in personam jurisdiction over nonresident defendant turns on: (1) whether applicable state rule or statute potentially confers jurisdiction over defendant; and (2) whether assertion of such jurisdiction accords with constitutional principles of due process. U.S.C.A. Const.Amend. 14.

**[4] Federal Courts 170B €→76.10**

170B Federal Courts
　170BII Venue
　　170BII(A) In General
　　　170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 2

87 F.Supp.2d 1060, 28 Media L. Rep. 1875
**(Cite as: 87 F.Supp.2d 1060)**

170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases
Specific jurisdiction over nonresident defendant requires that: (1) defendant have purposefully availed himself of privilege of conducting activities in forum, (2) claim have arisen or resulted from defendant's forum-related activities, and (3) exercise of jurisdiction be reasonable. U.S.C.A. Const.Amend. 14.

[5] Federal Courts 170B ☞76.25

170B Federal Courts
　　170BII Venue
　　　　170BII(A) In General
　　　　　　170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
　　　　　　　　170Bk76.25 k. Tort Cases. Most Cited Cases
New York newspaper had sufficient contacts with Hawaii to satisfy purposeful availment factor of personal jurisdiction test in defamation action brought by Hawaii resident, even though newspaper had only two subscribers in Hawaii; by publishing allegedly defamatory article whose effects would clearly be felt in Hawaii, and by regularly circulating newspapers in Hawaii, newspaper and its columnist purposefully availed themselves of privilege of conducting activities in Hawaii. U.S.C.A. Const.Amend. 14.

[6] Federal Courts 170B ☞76.1

170B Federal Courts
　　170BII Venue
　　　　170BII(A) In General
　　　　　　170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
　　　　　　　　170Bk76.1 k. In General. Most Cited Cases
　　　　　　　　(Formerly 170Bk76)
In determining whether exercise of personal jurisdiction over nonresident defendant is reasonable, court must consider: (1) extent of defendant's purposeful interjection; (2) burden on defendant in defending in forum; (3) extent of conflict with sovereignty of defendant's state; (4) forum state's interest in adjudicating dispute; (5) most efficient judicial resolution of controversy; (6) importance of forum to plaintiff's interest in convenient and effective relief; and (7) existence of alternative forum. U.S.C.A. Const.Amend. 14.

[7] Constitutional Law 92 ☞3965(8)

92 Constitutional Law
　　92XXVII Due Process
　　　　92XXVII(E) Civil Actions and Proceedings
　　　　　　92k3961 Jurisdiction and Venue
　　　　　　　　92k3965 Particular Parties or Circumstances
　　　　　　　　　　92k3965(8) k. Media and Publishing. Most Cited Cases
　　　　(Formerly 92k305(5))

Federal Courts 170B ☞76.25

170B Federal Courts
　　170BII Venue
　　　　170BII(A) In General
　　　　　　170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
　　　　　　　　170Bk76.25 k. Tort Cases. Most Cited Cases
Inconvenience to New York newspaper of trying libel action in Hawaii was not so great as to deprive newspaper and its columnist of due process, even though number of potential witnesses would need to travel to Hawaii for action, in light of modern advances in communications and transportation. U.S.C.A. Const.Amend. 14.

[8] Federal Courts 170B ☞76.25

170B Federal Courts
　　170BII Venue
　　　　170BII(A) In General
　　　　　　170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
　　　　　　　　170Bk76.25 k. Tort Cases. Most Cited Cases
Assertion of personal jurisdiction over New York newspaper in Hawaii in defamation action brought by Hawaii resident was reasonable, even though newspaper had only two subscribers in Hawaii and New York granted greater protections to newspaper under state constitution than those granted under

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

87 F.Supp.2d 1060, 28 Media L. Rep. 1875
**(Cite as: 87 F.Supp.2d 1060)**

First Amendment; limitations period had already run in New York, and plaintiff and five witnesses would have been required to travel to New York if action was not heard in Hawaii. U.S.C.A. Const.Amends. 1, 14.

**[9] Federal Courts 170B €═87.5**

170B Federal Courts
　　170BII Venue
　　　　170BII(A) In General
　　　　　　170Bk87 District Where Claim Arose
　　　　　　　　170Bk87.5 k. In General. Most Cited Cases
　　(Formerly 170Bk87)
Hawaii was proper venue for Hawaii resident's defamation action against New York newspaper and columnist; newspaper circulated subscriptions in Hawaii, and purported harm occurred in Hawaii. 28 U.S.C.A. § 1391(a)(2).

**[10] Federal Courts 170B €═74**

170B Federal Courts
　　170BII Venue
　　　　170BII(A) In General
　　　　　　170Bk74 k. Particular Actions. Most Cited Cases
Hawaii was proper venue for Hawaii resident's defamation action against New York newspaper and columnist; newspaper was subject to personal jurisdiction in Hawaii, and plaintiff could not bring action in New York due to running of limitations period under New York law. 28 U.S.C.A. § 1391(a)(3).

**[11] Federal Courts 170B €═113**

170B Federal Courts
　　170BII Venue
　　　　170BII(B) Change of Venue
　　　　　　170BII(B)1 In General; Venue Laid in Proper Forum
　　　　　　　　170Bk106 Determination in Particular Transferable Actions
　　　　　　　　　　170Bk113 k. Torts in General. Most Cited Cases
Transfer of venue of Hawaii resident's defamation action against New York newspaper and columnist was not warranted, absent evidence that travel would impose unreasonable burden on defendants. 28 U.S.C.A. § 1404(a).

**\*1061** Joseph M. Lovell, Honolulu, HI, for Plaintiff.
Peter W. Olson, Cades Schutte Fleming & Wright, Honolulu, HI, Trina R. HunnSlade R. Metcalf, Squadron Ellenoff Plesent**\*1062** & Sheinfeld, New York, NY, for Defendants.

**ORDER DENYING DEFENDANT N.Y.P. HOLDINGS, INC. AND CINDY ADAMS' MOTION TO DISMISS THE COMPLAINT and DENYING DEFENDANT N.Y.P. HOLDINGS, INC. AND CINDY ADAMS' MOTION TO TRANSFER VENUE**

GILLMOR, District Judge.

Plaintiff Nancy Miracle, the alleged daughter of Marilyn Monroe, brings this action against Defendants N.Y.P. Holdings, Inc. and Cindy Adams, to recover damages for the state law torts of libel per se, defamation, infliction of emotional distress, interference with contractual and business relations, and unjust enrichment. Plaintiff filed her Complaint in response to an article written by Cindy Adams, and published by the New York Post, entitled, "A Social Security mystery over Marilyn's ' daughters.' " Plaintiff alleges that Adams defamed Plaintiff in the article, and that the article has caused Plaintiff to suffer emotional and financial harm. Defendants have moved to dismiss the Complaint based on lack of personal jurisdiction.

In the alternative, Defendants have moved to dismiss on the ground that venue in the District of Hawaii is improper.

On May 18, 1999, Plaintiff filed a Complaint against Defendants in the Circuit Court of the First Circuit, State of Hawaii, alleging that Defendants committed the torts of libel per se, defamation, infliction of emotional distress, and interference with contractual and business relations, and unjust enrichment. On July 26, 1999, Defendants removed the case to this Court on grounds of complete diversity of citizenship.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

On August 23, 1999, Defendants filed a Motion to Dismiss the Complaint, or, in the Alternative, to Transfer Venue. Plaintiff filed an Opposition to Defendants' Motion on October 14, 1999. Defendants filed a Response on October 28, 1999.

The motion came on for hearing before the Court on November 8, 1999. After careful consideration of the record, pleadings, the parties' arguments, and the governing law, the Court DENIES Defendants' motion, for the reasons set forth herein.

Plaintiff's Complaint in this case stems from a column written by Defendant Cindy Adams and published in the New York Post on November 10, 1997. Adams, in her column titled, "A Social Security mystery over Marilyn's 'daughters'," discusses whether Plaintiff has been collecting the social security benefits of Marilyn Monroe. The column begins by setting forth the background of Plaintiff's claim that she is the daughter of Marilyn Monroe. (Exh. 1 to Plaintiff's Opp.) The article states that Plaintiff "lived in Hawaii." The column then goes on to discuss the social security benefits issue. Specifically, the column discusses the fact that an unidentified woman from Florida placed a telephone call to the Social Security Administration, claimed to be Monroe's daughter, and inquired about receiving Monroe's social security benefits. According to the column, the woman answering the telephone at the Social Security Administration informed the caller that Nancy Greene had been receiving Monroe's social security benefits. (*Id.*) The article concludes by suggesting that Plaintiff, " some blonde from Hawaii," collected Marilyn Monroe's social security benefits.

Plaintiff, in her Complaint, alleges that in the past she "has claimed to be the daughter of Marilyn Monroe." (Complaint ¶ 9.) Plaintiff also alleges that she is the "Nancy Greene" referred to in the column. Plaintiff takes issue with a number of statements made by Adams in the column about Nancy Greene. In particular, Plaintiff alleges that she was defamed by the statements that identify her as "an unmanicured looking blonde who lived in Hawaii," a "disheveled aging blonde," and **\*1063** " nuts." (Complaint ¶ 15.) Plaintiff also alleges that she was defamed by the following statement made in the column:

So, we're saying here that some blonde from Hawaii who claims she's the love-child of Monroe's youth-whether yes or no-whether so or not-somehow proved it sufficiently to have collected Marilyn's Social Security benefits for years?
Hellooooo-oo is anyone out there? Any wonder Social Security is in such a mess?

(Complaint ¶ 18). According to Plaintiff, this section of the column wrongfully imputes to her the crime of social security fraud.

The New York Post newspaper (the "Post"), which published the article, is a daily and Sunday newspaper that is distributed primarily in the New York City metropolitan area. (Affidavit of Ernie Rota, August 19, 1999, ¶ 2.) On the date the column was published, two copies of the Post were sold by subscription in the state of Hawaii. There were no copies of the Post sold on newsstands in Hawaii. (*Id.*) At the time the column at issue was published, the Post's total daily sales, including newsstand sales and subscriptions, amounted to 431,639. (*Id.*) Defendants allege that the Post neither solicits subscriptions in the state of Hawaii nor derives substantial income from sales in Hawaii. (*Id.* ¶ 3.)

Adams, the author of the column, resides in New York. Adams states in her Affidavit that, in writing the story, she did not contact any persons in Hawaii or go to Hawaii for any purpose. (Affidavit of Cindy Adams, August 19, 1999, ¶¶ 3,4.) Adams also alleges in her Affidavit that all editors of the column are located in New York. (*Id.* ¶ 9.)

Plaintiff, on the other hand, alleges that she has been a resident of Hawaii for almost 13 years. Plaintiff further alleges that she has suffered public ridicule and contempt in the state of Hawaii, and has lost out on lucrative business opportunities in Hawaii, due to the statements made about her in the column. (Complaint ¶¶ 20-22.) As a result of the alleged defamation, Plaintiff filed the instant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

action against Defendants. In her Complaint, Plaintiff alleges the following state law causes of action: (1) libel per se, (2) defamation, (3) tortious infliction of emotional distress, (4) tortious interference with contractual and business relations, (5) unjust enrichment, and (6) punitive damages.

[1][2] A motion to dismiss will be granted where there is a lack of jurisdiction over the person. Fed.R.Civ.P. 12(b)(2). Once the defendant moves to dismiss and presents evidence disputing personal jurisdiction, the burden shifts to the plaintiff to make a prima facie showing via admissible evidence that personal jurisdiction exists. *See Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995); *Data Disc., Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1284-1285 (9th Cir.1977); [FN1] *see also Alvarez v. Aircraft Modular Products, Inc.,* 949 F.Supp. 1470, 1472-1473 (D.Haw.1996) (plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction").

> FN1. A motion to dismiss for lack of personal jurisdiction may be resolved on the basis of declarations and discovery materials. *See Data Disc.,* 557 F.2d at 1285. A court may also conduct a full evidentiary hearing on the issue. If the court does so, the plaintiff must establish the requisite jurisdictional facts by a preponderance of the evidence. *Id.* at 1289 n. 5. The Court determines that for the purposes of the instant motion it is unnecessary to conduct a hearing.

I. *Personal Jurisdiction*

Defendants argue that the Court lacks personal jurisdiction over them because Defendants have insufficient contacts with the state of Hawaii in this action. Specifically,*1064 Defendants contend that their only connection to Hawaii is the fact that two copies of the Post were sold in Hawaii and the fact that the column mentions that Plaintiff "lived" in Hawaii and is "from" Hawaii. The Court is not persuaded by Defendants' argument. The Court determines it has personal jurisdiction over Defendants in this action because Defendants have sufficient contacts with the state of Hawaii.

Although the defendant is the moving party on a Rule 12(b)(2) motion to dismiss, the plaintiff is the party who invokes the court's jurisdiction and thus bears the burden of proof on the necessary jurisdictional facts. *See Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1392 (9th Cir.1984).

[3] A federal court's exercise of in personam jurisdiction over a nonresident defendant turns on two considerations: 1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and 2) whether assertion of such jurisdiction accords with constitutional principles of due process. *See Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir.1977). Hawaii's long-arm statute, Hawaii Revised Statutes § 634-35, "expand[s] the jurisdiction of the State's courts to the extent permitted by the due process clause of the Fourteenth Amendment." *Cowan v. First Insurance Co. of Hawaii, Ltd.,* 61 Haw. 644, 649, 608 P.2d 394 (Haw.1980) (footnote omitted). Hawaii's statutory limitations upon jurisdiction are thus coextensive with the outer limits of due process under the state and federal constitutions. *Id.* The issue the Court must address, therefore, is whether the requirements of due process are satisfied by the Court's exercise of personal jurisdiction over Defendants. *See Panavision International, L.P. v. Toeppen,* 141 F.3d 1316, 1320, (9th Cir.1998).

Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction. If the defendant is domiciled in the forum state or if his activities there are "substantial, continuous and systematic," a federal court can exercise "general" personal jurisdiction over the defendant under the state's long-arm statute. *Id.* at 1320 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-416, 104 S.Ct. 1868, 80 L.Ed.2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

87 F.Supp.2d 1060, 28 Media L. Rep. 1875
**(Cite as: 87 F.Supp.2d 1060)**

404 (1984)). Plaintiff does not contend that Defendants have sufficient contacts with Hawaii to subject them to general jurisdiction in this state.

[4] If a nonresident defendant's contacts with the forum state do not qualify as "continuous and systematic," a federal court may still exercise " specific" jurisdiction over claims related to his activities or contacts there. Specific jurisdiction requires that: (1) the defendant have purposefully availed himself of the privilege of conducting activities in the forum, (2) the claim have arisen or resulted from the defendant's forum-related activities, and (3) exercise of jurisdiction be reasonable. *See id.* at 1320.

### A. *Purposeful Availment*

The touchstone of the purposeful availment factor is whether the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Gordy v. Daily News, L.P.,* 95 F.3d 829, 832 (9th Cir.1996) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The requisite connection need not involve physical entry into the forum. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

[5] In the instant case, the jurisdictional facts are not disputed. The Post sold two subscriptions of the paper in Hawaii when Adams' column was published. In the column, Adams discussed Plaintiff's claim that she is the daughter of Marilyn Monroe, and stated that Plaintiff had received the social security benefits of Marilyn Monroe. Adams also stated both that Plaintiff was "from Hawaii" and "lived in Hawaii." The issue before the Court is *1065 whether these contacts are sufficient to confer specific jurisdiction over Defendants in Hawaii. Under pertinent caselaw, the Court determines that these contacts are sufficient to satisfy the purposeful availment factor.

*Gordy* is the Ninth Circuit's most recent pronouncement on the issue of personal jurisdiction in the context of a defamation case. As such, *Gordy* is particularly relevant to the issue presented here. In *Gordy,* considering facts similar to the instant case, the Ninth Circuit determined that personal jurisdiction existed. The defendant in *Gordy,* the New York Daily News ("Daily News"), published an article that contained allegedly defamatory statements about the plaintiff, Gordy, who was a resident of California. *See id.* at 831. The *Gordy* court was presented with the issue of whether the Daily News had sufficient contacts with California to establish personal jurisdiction.

The Daily News, which was based in New York, circulated greater than 99% of its newspapers within 300 miles of the New York metropolitan area. The Daily News did not contract with or employ distributors, or solicit subscriptions in California. *Id.* At the time of the case, however, a small but regular circulation of the Daily News reached California. Specifically, the Daily News circulated 13 copies of its daily edition and 18 copies of its Sunday edition to subscribers in California. *Id.* This California circulation constituted approximately .0017% of the paper's total circulation. *Id.*

The Daily News covered stories of nationwide interest, and in particular covered entertainment news. Due to its emphasis on the entertainment industry, the Daily News sent reporters to California, and also gathered news from anonymous sources and news services in California. *Id.*

The author of the article at issue in *Gordy* was a resident of New York. The author researched and wrote the article in question in New York. Before the publication of the article, the author authorized his associate to telephone Gordy in California to obtain his response. The associate also made telephone calls to two other persons in California while researching the story, to confirm it. *Id.*

The *Gordy* court determined that the Daily News and the author of the story had sufficient contacts with California to satisfy the purposeful availment factor of the personal jurisdiction test. In making this determination the court looked at all of the facts of the case, *see id.* at 834, but focused on two facts. First, the *Gordy* court found it particularly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

important that Gordy lived in California and that Gordy was, consequently, harmed in California. On this point, the *Gordy* court stated, "The prime targeting arises, of course, from the fact that Gordy is an individual who lives in California ... [i]t is reasonable to expect the bulk of the harm from defamation of an individual to be felt at his domicile."*Id.* at 833 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Second, the *Gordy* court relied on the fact that the Daily News had distributed at least 13 papers to California. *Id.* at 833-834. The *Gordy* court was not dissuaded by the small number of papers distributed. The court stated that 13 subscriptions, "even though few, is not random or fortuitous and is not even necessarily isolated." *Id.* Based primarily on the fact that some newspaper subscriptions were sold in California, and that Gordy lived in California, the *Gordy* court ultimately concluded that the defendant had purposefully availed itself of the California forum. *Id.* at 834.

In drawing its conclusion, the *Gordy* court drew heavily from the Supreme Court case of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), another case that dealt with the issue of personal jurisdiction in the context of a defamation case. In *Calder,* the plaintiff was Shirley Jones, a television actress. Jones lived and worked in California. She sued the National Inquirer, which had a circulation of 600,000 in California, claiming that the newspaper had libeled her. *1066 Jones sued in California both the reporter who wrote the story and his editor. The reporter wrote the story in Florida but made telephone calls to California in connection with the story. Before the story was published, the article called Jones' husband in California in order to elicit comments on the article. In addition, the author frequently traveled to California on business. The editor lived in Florida and edited the story there. *Calder,* 465 U.S. at 785-786, 104 S.Ct. 1482.

The Supreme Court concluded, based on these facts, that California had jurisdiction over the two defendants. *Id.* at 790-791, 104 S.Ct. 1482. In so concluding, the Court concentrated on the fact that the "effects" of the newspaper's, author's, and editor's Florida activities were felt by Jones in California. *Id.* at 789, 104 S.Ct. 1482.[FN2] The Court stated,

> FN2. The Supreme Court in *Calder* considered reasonableness and sufficiency of contacts together, rather than analyzing each as separate prongs of a test. *Id.* at 788-790, 104 S.Ct. 1482.

The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.
*Id.* at 788-789, 104 S.Ct. 1482 (quoting *World-Wide Volkswagen Corp.,* 444 U.S. at 297-298, 100 S.Ct. 559) (footnote omitted).

Based on *Calder* and *Gordy,* the Court determines that the Hawaii contacts of Defendants are sufficient to satisfy the purposeful availment prong of the specific jurisdiction test. Here, the two main elements the *Gordy* court focused on are present. First, as in *Gordy,* Plaintiff here was harmed in the state where she is bringing this action-Hawaii. Second, similar to the Daily News in *Gordy,* the Post circulated copies of its paper in the state of Hawaii. Although the Post only circulated two copies of its paper, as compared to the 13 copies circulated by the Daily News in *Gordy,* the *Gordy* court did not focus on the specific number but instead downplayed the significance of the number of papers that were circulated. *See Gordy,* 95 F.3d at 833-834 (noting that 13 subscriptions, "even though few, is not random or fortuitous ....") Nothing in *Gordy* indicates to the Court that two subscriptions is insufficient to satisfy the purposeful availment prong as interpreted by *Gordy.*[FN3] Defendants also purposefully availed themselves of the jurisdiction of Hawaii based on the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pronouncements of *Calder*. Here, as in *Calder,* the effects of Defendants' actions were felt by Plaintiff in the jurisdiction where she filed the action. This is so because Plaintiff lives in Hawaii and has allegedly experienced a great deal of harm in Hawaii.[FN4] These *1067 facts suggest that Defendants have purposefully availed themselves of Hawaii based on the "effects" of their conduct in Hawaii. *See Calder,* 465 U.S. at 789, 104 S.Ct. 1482.

> FN3. Plaintiff has suggested that a circulation of two newspapers in Hawaii represents a greater number of papers, in proportion to Hawaii's population, than does 13 papers in proportion to the population of California. Although the Court believes this representation is plausible, and even likely to be true, Plaintiff has presented no population figures to support the point. The Court determines, however, that the actual number of newspapers circulated in proportion to the population is not of great significance after *Gordy. Gordy,* as noted above, de-emphasized the importance of having a specific number of papers in order to meet the purposeful availment prong.

> FN4. The article does not explicitly recognize that Plaintiff currently lives in Hawaii. The article states only that Plaintiff "lived in Hawaii," and that Plaintiff is "from" Hawaii. Although these phrases are open to differing interpretations, the Court believes that one could reasonable interpret them to indicate that Plaintiff currently resides in the state of Hawaii. In any event, the language alerts readers to Plaintiff's ties to Hawaii.

The facts of this case, when analogized to *Gordy* and *Calder,* demonstrate that Defendants, even though they have not physically entered the state of Hawaii, should reasonably anticipate being required to go to court there. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. 559.

The purposeful availment prong of personal jurisdiction has been met.

Defendants contend that they have not purposefully availed themselves of this forum because significantly fewer contacts are present here than in either *Gordy* or *Calder.* The Court is not persuaded by this argument.

The Court acknowledges that Defendants' contacts with the forum where Plaintiff sued are fewer than those present in both *Gordy* and *Calder.* The Court, nevertheless, determines that Defendants have taken part in activity significant enough to have purposefully availed themselves of the forum. Although the *Calder* court looked to all the contacts, it placed great emphasis on the fact that the plaintiff lived in California and that the "effects" of the story were therefore felt by the plaintiff in California. Here, as noted already, Plaintiff lived in Hawaii when the article was published, and continues to reside there. She therefore felt the "effects" of the story in Hawaii. In *Gordy,* the Ninth Circuit's most recent case in this area, the court focused on the fact that there were at least some, although very few, papers circulated in California, and the fact that the plaintiff lived in California. Here, as in *Gordy,* there were some newspapers, although a small amount, circulated in Hawaii, and Plaintiff lives in Hawaii. Although there are fewer definitive contacts to the forum in this case, the main elements stressed by both *Calder* and *Gordy* are present.

Defendants also rely on *Church of Scientology v. Adams,* 584 F.2d 893 (9th Cir.1978), and *Demaris v. Greenspun,* 712 F.2d 433 (9th Cir.1983), to support their argument that the purposeful availment prong has not been satisfied. These cases are not persuasive. The *Gordy* court itself distinguished both cases. *Adams* involved the publication by the St. Louis Post-Dispatch of allegedly defamatory articles about the Church of Scientology. Two of these articles had circulations of 156 copies and 121 copies in California. The California Church of Scientology attempted to sue the newspaper in California. *See Adams,* 584 F.2d at 895-896. The *Adams* court, when analyzing the jurisdictional issue, determined that the relevant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.